IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.       )       Criminal No. 14-98<br>)<br>WILLIAM PERRY BAGLEY       ) | |

MEMORANDUM ORDER
AND TENTATIVE FINDINGS AND RULINGS

AND NOW, this 26th day of May, 2016, the Probation Office having conducted a presentence investigation and submitted a presentence report; the government not having filed a position paper as required by Local Criminal Rule 32.C.4 or otherwise having indicated any objections to the presentence report; defendant having filed a position paper stating his objections to the presentence report; the Probation Office having submitted an addendum and a supplemental addendum to the presentence report pursuant to Local Criminal Rule 32.C.6; and, both parties having filed sentencing memoranda, the court makes the following tentative findings and rulings:

1)   On April 22, 2014, a grand jury returned a two-count indictment against William Perry Bagley ("defendant") charging him at Count One with conspiracy to falsely make, forge and counterfeit over $14,000 of federal reserve notes, and to pass, utter or publish falsely made, forged, counterfeited and altered $100 federal reserve notes, in violation of 18 U.S.C. §371, and at Count Two with falsely making, forging and counterfeiting federal reserve notes, in violation of 18 U.S.C. §471. On January 7, 2016, defendant appeared before this member of the court and changed his previously entered plea of not guilty to guilty at both counts of the indictment.

The charges against defendant arose from an investigation conducted by the United States Secret Service ("USSS") from May of 2013 to June 20, 2013, regarding the passing of counterfeit $100 federal reserve notes ("FRN") at retail stores and other businesses in the Western District of Pennsylvania. The FRNs at issue are categorized as "bleached notes," meaning that they were manufactured by the bleaching of genuine $5 FRNs to remove the ink and then printing the image of a $100 FRN on the bleached bills.

   The investigation revealed that defendant manufactured approximately $14,100 in FRNs at the residences of two of his girlfriends in the Brookline neighborhood of Pittsburgh, Pennsylvania. Defendant then had other individuals use the counterfeit $100 FRNs to purchase low-dollar items to obtain genuine currency in change. For instance, on May 26, 2013, J.R., an associate of defendant, gave approximately $100 in counterfeit FRNs to a clerk at a Shop 'N Save grocery store. On or about June 10, 2013, R.H., another associate, gave approximately $100 in counterfeit FRNs to a clerk at a WalMart. On or about June 20, 2013, J.R. gave approximately $100 in counterfeit FRNs to a clerk at a Rite-Aid pharmacy and another $100 in counterfeit FRNs to a clerk at a Community Market. And, on that same day, R.H. gave approximately $100 in counterfeit FRNs to a clerk at a Community Market.

   In total, defendant manufactured and, through his associates, passed approximately $14,100 in counterfeit FRNs throughout the Pittsburgh area.[1]

2) While the United States Sentencing Guidelines now merely are advisory pursuant to the decision of the United States Supreme Court in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the court nevertheless still is required to <u>consider</u> the Guidelines as <u>a</u> factor in determining a defendant's sentence, along with the other factors enumerated in 18 U.S.C. §3553(a). Accordingly, the court makes the following guideline calculations:

  a) The 2015 edition of the Guidelines Manual has been used in this case to calculate defendant's advisory sentencing range.

  b) Pursuant to U.S.S.G. §3D1.2(d), because the offense level is determined largely on the basis of the total amount of loss, Counts One and Two of the Indictment are to be grouped into a single Group.

  c) Pursuant to U.S.S.G. §2X1.1(a), defendant's base offense level at Count One for conspiracy is the base offense level from the guideline applicable to the substantive offenses he conspired to commit. Here, the guideline applicable to the substantive offenses of falsely making, forging and counterfeiting federal reserve notes, and of passing, uttering or publishing falsely made, forged, counterfeited and altered federal reserve notes, is U.S.S.G. §2B5.1(a). Defendant's base offense level at Count Two likewise is determined by U.S.S.G. §2B5.1(a), which establishes a base offense level of **9**.

---

[1] The offense conduct as set forth herein is gleaned primarily from the factual basis presented by Assistant United States Attorney Shardul S. Desai, and admitted to by defendant, at the change of plea hearing held on January 7, 2016. In his sentencing papers, defendant has objected to the offense conduct as set forth in ¶¶6-17 of the PSIR. Because most of the information contained in those paragraphs of the PSIR primarily relates to details of the investigation, defendant's disagreement with those particulars is not relevant to the calculation of his sentencing range under the advisory guidelines in light of his admission to the offense conduct as stated on the record at the change of plea hearing and summarized here.

d) Under the guidelines, a two-level increase to defendant's base offense level is warranted pursuant to U.S.S.G. §§2B5.1(b)(1)(B) and 2B1.1(b)(1)(B) because the face value of the counterfeit items exceeded $6,500 but was not more than $15,000. Here, the parties stipulated that the face value of the counterfeit FRNs involved in this case was more than $10,000 and less than $15,000, and the investigation established that defendant manufactured approximately $14,100 in counterfeit FRNs.

e) Under the guidelines, a two-level increase is warranted pursuant to §2B5.1(b)(2)(A) because defendant manufactured or produced counterfeit obligations of the United States, or possessed or had custody of, or control over, a counterfeiting device or materials used for counterfeiting.

f) Based on the above, defendant's adjusted offense level is **13** under the guidelines

g) Pursuant to U.S.S.G. §2B5.1(b)(3), because §2B5.1(b)(2)(A) applies and the resulting offense level is less than 15, the offense level must be increased to **15**.

h) The court finds that no increase is warranted under U.S.S.G. §3C1.1 for willfully obstructing or impeding the administration of justice.

Pursuant to §3C1.1, a 2-level increase to defendant's offense level should be applied if: (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution or sentencing of the instant offense of conviction; and, (2) the obstructive conduct related to: (A) the defendant's offense of conviction and any relevant conduct, or (B) a closely related offense. One example of obstructive conduct is threatening, intimidating or otherwise unlawfully influencing a witness, directly or indirectly, or attempting to do so. See U.S.S.G. §3C1.1, Application Note 4(A).

In this case, the government argues that the §3C1.1 enhancement is warranted based upon a Facebook message that defendant sent to the girlfriend of R.H. on March 22, 2014, four days after R.H. met with the federal prosecutor and law enforcement agents.[2] Defendant does not deny that he sent the Facebook message, and, as noted, threatening a witness plainly is an example of obstructive conduct within the meaning of §3C1.1.

---

[2] The Facebook message states: "I know where u live and tell rob I will buss his fucking head if he talk one more word of bullshit to anyone bout me everything, fuck what yall talking bout, he wont be on Brownsville talking shit on me. I live across from zacks [. . .] and will shoot that bitch nigga or put 5 grand on his dirty ass every thing [. . .] im bout to pop up at ya crib by the uni, I know where u live and nigga think it kool what he doing Ill get at him quick when he wit whoever foreal."

However, a threat *in and of itself* is not sufficient to warrant the enhancement. Rather, §3C1.1 explicitly provides that the obstructive conduct, in this case, the threat, <u>also</u> must be related to defendant's offense of conviction and any relevant conduct, or a closely related offense. *See* <u>United States v. Jenkins</u>, 275 F.3d 283, 289 (3d Cir. 2001)("U.S.S.G. §3C1.1 is not an invitation to consider every instance in which a defendant acted in a blameworthy fashion. Only conduct obstructing the "instant offense of conviction" is relevant to sentencing... [w]ithout some nexus between the obstruction and the federal offense, U.S.S.G. §3C1.1 is inapplicable").

Here, while not denying that he sent the message, defendant nevertheless contends that the threat had nothing to do with the pending investigation, but instead was related to a personal dispute with R.H. based on R.H.'s statements around the neighborhood insinuating that defendant was "snitching" on R.H. Although the government argues that defendant's explanation is "highly implausible," the court believes that it *at least* is as likely that the threat was *not* related to R.H's cooperation as it is likely that it was. Accordingly, a preponderance of the evidence of record does not support the application of the enhancement in this case.

The court notes that the government does not argue that defendant's Facebook post compromised the investigation or prosecution of this case in any way, nor that the threat was intended to dissuade R.H. from testifying or cooperating with investigators. Based on the record,[3] the court concludes that the Facebook message sent by defendant, while undeniably a threat, as likely was related to a personal dispute as it was related to defendant's offense of conviction. Accordingly, the court will not apply a 2-level increase under U.S.S.G. §3C1.1 for obstruction of justice.

i) There are no victim-related or role-related adjustments applicable under the guidelines.

j) Based on the above, defendant's adjusted offense level is **15** under the guidelines.

---

[3] In its sentencing memorandum, the government indicated that R.H. and his girlfriend informed investigators that "they understood this Facebook posting as a threat to them for helping the USSS investigation." The government also stated at a status conference held on May 25, 2016, that it had intended to call R.H. and his girlfriend as witnesses at the sentencing hearing to testify in that regard. However, even if the court were to accept that R.H. and his girlfriend *believed* defendant's threat to be related to R.H's. cooperation, the court still is not persuaded that their understanding of defendant's motivation for sending the message is sufficient to tip the scales in the government's favor when defendant's explanation for his rationale in sending the message is equally as plausible.

    k)      Under the guidelines, defendant is entitled to a two-level decrease for acceptance of responsibility pursuant to §3E1.1(a).

    l)      Based on the above, defendant's adjusted offense level is **13** under the guidelines.

    m)      There are no Chapter Four adjustments applicable under the guidelines.

    n)      Based on the above, defendant's total offense level is **13** under the guidelines.

    o)      Defendant has a criminal history score of 16 which results in a criminal history category of **VI** under the guidelines. See U.S.S.G. §4A1.1; §5 (Part A).

    p)      Based on a total offense level of **13** and a criminal history category of **VI**, and pursuant to U.S.S.G. §5 (Part A), defendant's guideline sentencing range is **33 - 41** months, which falls within Zone D. Pursuant to U.S.S.G. §5C1.1(f), the minimum term shall be satisfied by a sentence of imprisonment. Pursuant to Booker, supra, this guideline range is advisory only, not mandatory, and is to be considered as a factor in determining defendant's sentence.

3)      The maximum statutory term of imprisonment which may be imposed at Count One is not more than 5 years. 18 U.S.C. §371. The maximum statutory term of imprisonment which may be imposed at Count Two is not more than 20 years. 18 U.S.C. §471.

4)      The authorized statutory term of supervised release which may be imposed at both of Counts One and Two is not more than 3 years as defendant has pled guilty at Count One to a Class D felony and at Count Two to a Class C felony. 18 U.S.C. §§3559(a)(3) & (4); 3583(b)(2). Pursuant to 18 U.S.C. §3624(e), multiple terms of supervised release are to run concurrently.

5)      Under the guidelines, the authorized term of supervised release which may be imposed at both of Counts One and Two is at least 1 year but not more than 3 years, U.S.S.G. §5D1.2(a)(2), as defendant has pled guilty at Count One to a Class D felony and at Count Two to a Class C felony. 18 U.S.C. §3559(a)(3) & (4). A term of supervised release is mandatory under the guidelines. U.S.S.G. §5D1.1(a)(2). However, the guidelines are advisory, not mandatory, pursuant to Booker.

6)      Defendant is statutorily eligible for a term of probation of not less than one year and not more than 5 years at both of Counts One and Two. 18 U.S.C. §3561(a) and (c)(1). However, he is not eligible for a sentence of probation under the advisory guidelines. U.S.S.G. §5C1.1(f); 5B1.1, appl. note 2.

7)   The maximum statutory fine which may be imposed at both of Counts One and Two is $250,000. 18 U.S.C. §3571(b)(3).

8)   Pursuant to U.S.S.G. §5E1.2(h)(1), for offenses committed prior to November 1, 2015, the court is to use the applicable fine range set forth in §5E1.2(c) of the 2014 edition of the Guidelines Manual. Pursuant to §5E1.2(c)(3) of that manual, the fine guideline range in this case is a minimum fine of $3,000 to a maximum fine of $30,000. Pursuant to Booker, this guideline range is advisory, not mandatory. Moreover, defendant does not have the current ability to pay a fine nor is it likely that he will become able to pay any fine. U.S.S.G. §5E1.2(a).

9)   The court finds that the imposition of restitution in the full amount of the value of the property loss is statutorily mandated pursuant to 18 U.S.C. §3663A(a)(1) and (c)(1)(A)(ii) and that the imposition of restitution is required under the guidelines. U.S.S.G. §5E1.1(a)(1). The amount of restitution is to be based upon the value of the property loss reduced by the value of any part of the property that has been returned. 18 U.S.C. §3663A(b)(1)(B). Here, the amount of restitution due and owing is a total of $14,100 payable to 110 enumerated victims in the enumerated amounts as set forth in a restitution chart attached hereto as Exhibit 1.

10)  Pursuant to 18 U.S.C. §3013(a)(2)(A), a special assessment of $100 is mandatory at both of Counts One and Two for a total special assessment of $200.

11)  The court finds that there are no factors present which would warrant the exercise of this court's discretionary authority to *depart* from the guidelines. To the extent defendant may be entitled to a *variance* from the advisory guideline range, pursuant to Booker, the court is required to consider the guidelines as a factor in determining a defendant's sentence, along with the other factors set forth in 18 U.S.C. §3553(a), in fashioning a sentence that is sufficient, but not greater than necessary, to achieve the statutory purposes of sentencing. The court will do so in this case taking into account all of the relevant factors bearing upon an appropriate sentence.

*/s/ Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Shardul S. Desai
Assistant U.S. Attorney

Stephen Israel, Esq.
Israel & Specter
429 Forbes Avenue
Suite 711
Pittsburgh, PA 15219

Tracey DeMartino
U.S. Probation Officer